# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA JAMES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DRIVETIME OF FRESNO,<br><br>　　　　　Defendant. | Case No.  1:20-cv-00207-NONE-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAYING ACTION<br><br>(ECF Nos 8, 9, 10-11, 12)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Currently before the Court is Drivetime of Fresno's ("Defendant") motion to compel arbitration which has been referred to the United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  (ECF No. 16.)  The Court, having reviewed the record, finds this matter suitable for decision without oral argument.  See Local Rule 230(g).

**I.**

**BACKGROUND**

On June 28, 2018, Vanessa James ("Plaintiff") entered into a contract with Defendant to purchase a used 2015 Kia Optima.  (Compl. ¶ 6, ECF No. 1-1.)  Prior to purchasing the vehicle, Plaintiff was informed that the vehicle was in good condition and she relied on this statement in purchasing the vehicle.  (Id., ¶ 7.)  After purchasing the vehicle, Plaintiff discovered that the vehicle had sustained prior collision damage and the rear suspension had not been repaired

1 properly; there was after-market wiring, unplugged and partially disassembled wiring, a non-
2 functioning starter; and other defects. (Id., ¶ 8.) Plaintiff notified Defendant of these findings
3 and Defendant refused to rescind the contract. (Id., ¶ 9.)

4       On December 18, 2019, Plaintiff filed this action in the Superior Court of the State of
5 California, County of Fresno, against Defendant alleging intentional misrepresentation, negligent
6 misrepresentation, breach of written contract, violation of section 17200 of the California
7 Business and Professions Code, and violation the Consumer Legal Remedies Act. (ECF No. 1-
8 1.) The complaint also alleged claims against a doe defendant who has not been identified or
9 served. (Id.) Plaintiff is seeking monetary damages, injunctive relief, and attorney fees. (Id.)
10 On February 20, 2020, Defendant removed the action to the Eastern District of Fresno pursuant
11 to 28 U.S.C. §§ 1332(a)(1) and 1441(a). (ECF No. 1.)

12       On February 14, 2020, Defendant filed a motion to compel arbitration and stay this
13 action. (ECF No. 4.) On March 17, 2020, Plaintiff filed an opposition to the motion. (ECF No.
14 6.) On March 25, 2020, Defendant filed a notice of errata and the motion to compel was refiled
15 with the memorandum of points and authorities. (ECF Nos. 7, 8.) Plaintiff filed an opposition to
16 the motion on April 13, 2020. (ECF No. 9.) Defendant filed a reply and a request for judicial
17 notice on May 5, 2020. (ECF Nos. 10-11.) On May 6, 2020, Plaintiff filed objections to the
18 request for judicial notice. (ECF No. 12.) On January 26, 2021, the matter was referred to the
19 undersigned for the preparation of findings and recommendations. (ECF No. 16.)

20 <center>**II.**</center>
21 <center>**LEGAL STANDARD**</center>

22       In 1925 the Federal Arbitration Act ("FAA") was enacted in response to judicial hostility
23 to arbitration agreements. AT&T Mobility LLC v. Concepcion (Concepcion), 563 U.S. 333, 339
24 (2011). The primary provision of the FAA provides that a contract which evidences an intent to
25 settle a controversy by arbitration "shall be valid, irrevocable, and enforceable, save upon such
26 grounds as exist at law or in law for the revocation of any contract." Concepcion, 563 U.S. at
27 339 (quoting 9 U.S.C. § 2). The Supreme Court has found that "Section 2 is a congressional
28 declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state

substantive or procedural policies to the contrary[,]" and the effect is to create a body of federal substantive law of arbitrability. Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983). The FAA places arbitration agreements on an equal footing with other contracts and requires the court to enforce such an agreement according to its terms. Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010). "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The court's role in deciding whether a dispute is arbitrable, is "limited to determining (1) whether a valid agreement to arbitrate exists; and if it does (2) whether agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000)). If the party seeking to compel arbitration establishes these two factors then the court must compel arbitration. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") "To determine whether the parties formed an agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." Int'l Bhd. of Teamsters v. NASA Servs., Inc., 957 F.3d 1038, 1042 (9th Cir. 2020) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

## III.

## DISCUSSION

Defendant moves to compel arbitration in this matter as the arbitration agreement that Plaintiff expressly agreed to provides that "all disputes" "arising from or relating to" her contract with Defendant, the vehicle and or sale of the vehicle, or any advertisements, oral or written statements related to the contract and the rescission and termination of the contract shall be arbitrated. (Mot. of Def. Drivetime Car Sales Co. LLC, to Compel Arbitration and Stay Action

("Mot."), 4,[1] ECF No. 8.) Defendant contends that Plaintiff's claims are within the scope of the agreement and the agreement is valid under applicable law. Defendant argues that Plaintiff's claims are not properly before this court and must be resolved through individual arbitration pursuant to the arbitration agreement. Defendant also moves for this action to be stayed pending conclusion of arbitration.

Plaintiff does not contest that she agreed to arbitration or that the claims at issue are covered by the arbitration clause, but counters that the arbitration clause is null and void. Plaintiff contends that a provision of the agreement provides that if the "No Class Actions or Private Attorney General ["PAGA"] Actions" clause is found to be limited or void the agreement to arbitrate is null and void. (Pl.'s Opp. to Def.'s Sec. Mot. to Compel Arbitration ("Opp'n"), 1, ECF No. 9.) Plaintiff asserts that this is an all or nothing clause and since in Iskanian v. CLS Transportation, 59 Cal.4th 348 (2014), the California Supreme Court declared a PAGA waiver invalid the arbitration agreement is void. Plaintiff argues that while Defendant will likely argue that the voiding clause only applies in cases where a class action or PAGA claim is brought, such argument is contrary to the language of the voiding clause.

Defendant replies that Plaintiff's argument fails as a matter of fact and matter of law. Since this is not a class action or a private attorney general action, Defendant argues that the voiding clause is not implicated in this case. Defendant contends that any limitations on the enforceability of the arbitration agreement under Iskanian or McGill v. Citibank, N.A., 2 Cal.5th 945 (2017), are factually and legally inapplicable. Defendant argues that even if the provision is relevant in this matter the arbitration agreement remains enforceable.

"Section 2 of the Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Concepcion, 563 U.S. at 336 (quoting 9 U.S.C. § 2). The Supreme Court has found that this policy reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract[.] In line with

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms[.]" Concepcion, 563 U.S. at 339 (internal punctuation and citations omitted).

### A. A Valid Agreement to Arbitrate Exists and the Agreement Encompasses the Dispute at Issue

Defendant attaches as an exhibit a copy of the arbitration agreement which is signed by Plaintiff. (Arbitration Agreement, ECF No. 8-3 at 6.) Plaintiff does not contest that she signed the arbitration agreement or that the arbitration agreement encompasses the claims brought in this action.

The definition of claims provided in the arbitration agreement covers any claim, dispute or controversy between Plaintiff and Defendant "arising from or related to one of the following:

(a) The Contract.
(b) The vehicle or the sale of the vehicle.
(c) The provision or sale of any goods and services like warranties, insurance and extended service
contracts covered by the Contract or related to the vehicle.
(d) The relationships resulting from the Contract.
(e) Advertisements, promotions or oral or written statements related to the Contract.
(f) The financing terms.
(g) Your credit application.
(h) The origination and servicing of the Contract.
(i) The collection of amounts you owe us.
(j) Any repossession, or replevin, of the vehicle.
(k) Your personal information
(l) The rescission or termination of the Contract.

(ECF No. 8-3 at 3.) " 'Claim' has the broadest reasonable meaning. It includes claims of every kind and nature." (Id.) As stated above, Plaintiff does not dispute that the claims raised in this action fall within the broad scope of the definition of claims that must be arbitrated pursuant to the arbitration agreement. Defendant has established that a valid agreement to arbitrate exists and that the dispute at issue in this action is covered by the arbitration agreement.

### B. The Miscellaneous Terms Have Not Voided the Arbitration Agreement

The issue here is whether the terms of the arbitration agreement have made it void due to the California Supreme Court's holding in Iskanian. In Iskanian, the Court held that an agreement that compels the waiver of representative claims under PAGA is contrary to public

policy and unenforceable as a matter of state law. Iskanian, 59 Cal.4th at 384. The Iskanian Court further held that "California's public policy prohibiting waiver of PAGA claims, whose sole purpose is to vindicate the Labor and Workforce Development Agency's interest in enforcing the Labor Code, does not interfere with the FAA's goal of promoting arbitration as a forum for private dispute resolution." Id. at 388–89. "Therefore, the FAA does not preempt a state law that prohibits waiver of PAGA representative actions in an employment contract." Id. at 360.

"The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' " Concepcion, 563 U.S. at 344 (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)). "A motion to compel arbitration is, in essence, a request for specific performance of a contractual agreement." Duffens v. Valenti, 161 Cal.App.4th 434, 443 (2008) (quoting Fittante v. Palm Springs Motors, Inc., 105 Cal.App.4th 708, 713 (2003)). Under California law, the court is to interpret the arbitration agreement as it would any other contract. Kec v. Superior Court of Orange Cty., 51 Cal.App.5th 972, 978 (2020). The superseding objective of the court in interpreting a contract is to "give effect to the mutual intention of the parties as it existed at the time of contracting." Int'l Bhd. of Teamsters, 957 F.3d at 1042 (quoting Cal. Civ. Code § 1636). "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. "Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first." Doe 1 v. AOL LLC ("AOL LLC"), 552 F.3d 1077, 1081 (9th Cir. 2009) (quoting Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999)). An "arbitration agreement is subject to the same rules of construction as any other contract, including the applicability of any contract defenses." Duffens, 161 Cal.App.4th at 443 (quoting Fittante, 105 Cal.App.4th at 713).

> " 'The fundamental rule is that interpretation of ... any contract ... is governed by the mutual intent of the parties at the time they form the contract. The parties' intent is found, if possible, solely in the contract's written provisions. "The 'clear

and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage', controls judicial interpretation." If a layperson would give the contract language an unambiguous meaning, we apply that meaning.' "

Kec, 51 Cal.App.5th at 978 (internal citations omitted); accord AOL LLC, 552 F.3d at 1081.

In determining the meaning of the agreement between the parties to arbitrate this action, the Court reviews the language of the agreement and the context of the sections in which they are enclosed.

The agreement provides that "**YOU WILL NOT HAVE THE RIGHT TO BE A MEMBER OR REPRESENTATIVE IN A CLASS ACTION OR A PRIVATE ATTORNEY GENERAL ACTION IN COURT OR IN ARBITRATION.**"  (ECF No. 8-3 at 2 (emphasis in original).

The agreement further provides,

> However, notwithstanding any language in this Agreement to the contrary, a "Claim" does not include a dispute about the validity, enforceability, coverage or scope of this Agreement (including, without limitation, the paragraph below captioned "No Class Actions or Private Attorney General Actions," the final sentence under the paragraph below captioned "Miscellaneous" and/or this sentence); any such dispute is for a court, and not an arbitrator to decide. This exclusion from the definition of a "Claim" does not apply to any dispute or argument that concerns the validity or enforceability of the Contract as a whole; any such dispute or argument is for the arbitrator, not a court, to decide.
> . . .
> [W]e will not require arbitration of any individual Claim you make in small claims court or your state's equivalent court, if any.  If, however, you or we transfer or appeal the Claim to a different court, we reserve our right to elect arbitration.

(Id. at 3.)

The No Class Actions or Private Attorney General Action provision states,

> Notwithstanding any language herein to the contrary, if you or we elect to arbitrate a Claim, neither you nor we will have the right to: (1) participate in a class action in court or in arbitration, either as a class representative, class member or class opponent; (2) act as a private attorney general in court or in arbitration, or (3) join or consolidate your Claim(s) with claims of any other person, and the arbitrator shall have no authority to conduct any such class, private attorney general or multiple-party proceeding.  This paragraph does not apply to any lawsuit filed against us in court by a state or federal government agency even when such agency is seeking relief on behalf of a class of borrowers including you.  This means that we will not have the right to compel arbitration of any claim brought by such an agency.

1  (Id. at 4.)

2      The Miscellaneous provision provides:

3  If there is a conflict or inconsistency between the administrator's rules and this Agreement, this Agreement governs.  If there is a conflict or inconsistency between this Agreement and the Contract, this Agreement governs.  If a court or arbitrator deems any part of this Agreement invalid or unenforceable under any law or statute consistent with the FAA, the remaining parts of this Agreement shall be enforceable despite such invalidity.  However, if a court limits or voids any part of the above paragraph captioned "No Class Actions or Private Attorney General Actions" in any proceeding, then this entire Agreement (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal such limitation or voiding.

9  (Id. at 5.)

    The agreement provides that if any part of this agreement is found to be invalid or unenforceable under any law or statute consistent with the FAA the remaining parts are enforceable despite such invalidity.  But the agreement then goes on to address the class action no private attorney general provisions and states that if the provision is found to be unenforceable the entire agreement is unenforceable.  Plaintiff argues that this provision means that the entire agreement is unenforceable in this action as the agreement states that "if a court limits or voids any part of the above paragraph captioned "No Class Actions or Private Attorney General Actions" in any proceeding, then this entire Agreement (except for this sentence) shall be null and void with respect to such proceeding."  (ECF No. 8-3 at 5.)

    The primary goal in interpreting contracts under California law is "to give effect to the parties' mutual intent gathered from the entire document." Int'l Bhd. of Teamsters, 957 F.3d at 1046.  A primary rule of interpretation of contracts is that they "must be construed as a whole, that is, from their four corners, and the intention of the parties is to be collected from the entire instrument and not detached portions thereof, it being necessary to consider all of the parts to determine the meaning of any particular part as well as of the whole.  Individual clauses and particular words must be considered in connection with the rest of the agreement, and all of the writing and every word of it will, if possible, be given effect." Ajax Magnolia One Corp. v. S. Cal. Edison Co., 167 Cal.App.2d 743, 748 (1959).

    "A [contract] provision will be considered ambiguous when it is capable of two or more

1  constructions, both of which are reasonable.  But language in a contract must be interpreted as a
2  whole, and in the circumstances of the case, and cannot be found to be ambiguous in the
3  abstract." Int'l Bhd. of Teamsters, 957 F.3d at 1044 (citations omitted).  "[A]n ambiguity cannot
4  be created by parsing words outside their context."  Alameda Cty. Flood Control & Water
5  Conservation Dist. v. Dep't of Water Res., 213 Cal.App.4th 1163, 1179 (2013).  "[C]ourts will
6  not strain to create an ambiguity where none exists[.]"  Int'l Bhd. of Teamsters, 957 F.3d at
7  1044. (citations omitted).  Any ambiguity in the contract is to be construed against the party who
8  caused the ambiguity.  Penthouse Int'l, Ltd. v. Barnes, 792 F.2d 943, 948 (9th Cir. 1986).

9        Both parties argue that the voiding provision is unambiguous but differ as to the
10 interpretation of the term.  The language of a contract is not "made ambiguous simply because
11 the parties urge different interpretations." Int'l Bhd. of Teamsters, 957 F.3d at 1044. (citations
12 omitted).  Plaintiff argues that the plain meaning of the language "is clear and unambiguous; the
13 Agreement is, as to the referenced paragraph, all or nothing." (Opp'n at 9.)  Defendant counters
14 that "[u]nder its plain terms, any voiding or nullification of the Arbitration Agreement is
15 expressly contingent upon the results of an appeal of any ruling finding any portion of the
16 Agreement to be unenforceable.  Put differently, and contrary to Plaintiff's erroneous
17 interpretation of the Agreement's clear language, there is no immediate nullification or voiding
18 of the Arbitration Agreement.  Rather, only if an appeal by DriveTime from the Court's ruling
19 does not succeed would the Arbitration Agreement become null and void in its entirety." (Reply
20 at 3.)

21       Considering the principles which apply to interpreting the agreement, the Court finds that
22 in determining the meaning of the "voiding clause" the word "such" is determinative.  The
23 agreement specifically states that "if a court limits or voids any part of the above paragraph
24 captioned "No Class Actions or Private Attorney General Actions" in any proceeding, then this
25 entire Agreement (except for this sentence) shall be null and void with respect to **such**
26 proceeding, subject to the right to appeal such limitation or voiding." (ECF No. 8-3 at 5
27 (emphasis added.)

28       Plaintiff argues that this clause would apply to her individual claim, however, the

9

language of the arbitration agreement itself does not state that the agreement would be null and void as to **all** proceedings but specifically uses "**such** proceedings." Here, "such" is a limiting word that modifies proceedings. Therefore, the Court must construe the meaning of "such" in this instance according to the principles that apply to construing the language of contracts.

In reviewing the language itself, the clause states, "if a court limits or voids any part of the above paragraph captioned "No Class Actions or Private Attorney General Actions" in any proceeding, then this entire Agreement (except for this sentence) shall be null and void with respect to such proceeding. . . ." (ECF No. 8-3 at 5.) While the language in the provision could be clearer, that does not make it ambiguous. Alameda Cty. Flood Control & Water Conservation Dist., 213 Cal.App.4th at 1179.

Plaintiff makes a conclusory argument that the clause applies to all actions. However, Defendant notes the limiting language in the sentence that it is subject to right to appeal such limitation or voiding. While Plaintiff argues that "such" in the sentence "reasonably refers" to any proceedings, the Court would have to disagree. If the Court were to credit Plaintiff's reading of the clause then the agreement would read it was null and void in **any** proceeding making the word "such" superfluous. This is inconsistent with the law, which provides that, if possible, every word of the agreement is to be given effect. Ajax Magnolia One Corp., 167 Cal.App.2d at 748.

In reading the paragraph as a whole, the Court finds that the word "such" is reasonably found to apply to class actions or private attorney general actions. The prior sentence addresses the severability of provisions if they are found to be invalid or unenforceable under any law or statute consistent with the FFA. (ECF No. 8-3 at 5.) The next sentence specifically addresses the "no class actions or private attorney general actions" provision. The fact that the previous sentence addresses the severability upon a finding of invalidity supports the conclusion that the subsequent sentence in intended to apply only to the proceedings referenced in the sentence which is class actions and attorney general actions. (ECF No. 8-3 at 5.) Therefore, the Court finds that the nearest reasonable reference to which the word "such" would apply would be "No Class Actions or Private Attorney General Actions"  Construing the sentence in this way is

reasonable. See Klamath Water, 204 F.3d at 1210 (noting that in construing provisions in a written contract, the terms should be read as a whole and "preference" should be "given to reasonable interpretations.")

Further, this reading is consistent with the language of the agreement as a whole which addresses arbitration in the general sense and then limits the ability to bring a claim as a class action or representative for a PAGA claim. Initially, the arbitration agreement provides clearly on the first page under "Notice of Arbitration Agreement" that Plaintiff will not have the right to be a member or representative in a class action or attorney general action in either court or in arbitration. (ECF NO. 8-2 at 2.) Specifically, the agreement addresses individual claims as follows: "we will not require arbitration of any individual Claim you make in small claims court or your state's equivalent court, if any. If, however, you or we transfer or appeal the Claim to a different court, we reserve our right to elect arbitration." (ECF No. 8-3 at 3.) The "No Class Actions or Attorney General Action" provision is set forth in a separate heading distinguishing it from individual actions. (Id. at 4.)

The Court finds that the clause which makes the agreement void upon a finding that the "No Class Actions or Private Attorney General Actions" is limited or void only applies to class action or PAGA claims, not to individual claims such as those raised in this action.

**C.    The Waiver of PAGA Claims is Severable from the Arbitration Agreement**

To the extent that Defendant argues that in order for the clause to be invoked an appellate court would have to find the clause invalid in the specific case, the California Supreme Court has already ruled that an arbitration agreement that includes a waiver of PAGA claims cannot be enforced. Iskanian, 59 Cal.4th at 384. Therefore, the agreement could not be enforced and in a PAGA action the Court would be required to determine if the clause would be severable such that the remainder of the agreement could be enforced. To the extent that Plaintiff could argue that the waiver of the PAGA claim made the arbitration agreement unenforceable because it contains a PAGA waiver that does not apply to her claims, the Court finds that the invalid PAGA waiver is severable.

California law provides that "[w]here a contract has several distinct objects, of which one

1  at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the
2  latter and valid as to the rest." Cal. Civ. Code § 1599; see also Fair v. Bakhtiari, 195 Cal.App.4th
3  1135, 1157 (2011) ("Civil Code section 1599 codifies the common law doctrine of severability
4  of contracts.") "If a contract is capable of severance, the decision whether to sever the illegal
5  portions and enforce the remainder is a discretionary decision for the trial court to make based on
6  equitable considerations." Fair, 195 Cal.App.4th at 1157. "Courts are to look to the various
7  purposes of the contract. If the central purpose of the contract is tainted with illegality, then the
8  contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the
9  contract, and the illegal provision can be extirpated from the contract by means of severance or
10 restriction, then such severance and restriction are appropriate." Marathon Entm't, Inc. v. Blasi,
11 42 Cal.4th 974, 996 (2008), as modified (Mar. 12, 2008). "[C]ourts will generally sever illegal
12 provisions and enforce a contract when nonenforcement will lead to an undeserved benefit or
13 detriment to one of the parties that would not further the interests of justice. Armendariz v.
14 Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 127 (2000).

The PAGA waiver is not the main purpose, but is collateral to such purpose which is to arbitrate the claims. The arbitration agreement here specifically provides for the severability of parts of the agreement held to be invalid or unenforceable. (ECF No. 8-3 at 5.) In this instance, although the California Supreme Court has held that the PAGA waiver is unenforceable, Plaintiff has only brought individual claims in this action and the agreement of the parties was that such claims would be subject to arbitration.

The PAGA waiver is set forth separately in the arbitration agreement and can be severed without invalidating the remainder of the agreement to arbitrate Plaintiff's individual claims. Severing the PAGA waiver would enforce the agreement of the parties and failing to sever the PAGA waiver would be a detriment to Defendant and would provide Plaintiff with an undeserved benefit by not requiring her to comply with the terms of the agreement. Severing the PAGA waiver furthers the interests of justice.

The Court finds that the PAGA waiver is severable and, since no PAGA claim is brought in this action, to hold otherwise would violate the "liberal federal policy favoring arbitration."

Whitworth v. SolarCity Corp., 336 F.Supp.3d 1119, 1130 (N.D. Cal. 2018); see also Nguyen v. Tesla, Inc., No. 819CV01422JLSJDE, 2020 WL 2114937, at *5 (C.D. Cal. Apr. 6, 2020), reconsideration denied, No. 819CV01422JLSJDE, 2020 WL 4530426 (C.D. Cal. July 24, 2020), appeal dismissed, No. 20-55873, 2020 WL 6875203 (9th Cir. Nov. 20, 2020) (severing waiver for seeking any public relief from any forum from arbitration agreement); Levin v. Caviar, Inc., 146 F.Supp.3d 1146, 1159 (N.D. Cal. 2015) (severing PAGA waiver from arbitration agreement).  The Court recommends that Defendant's motion to compel arbitration be granted.[2]

### D. The Matter Should be Stayed While the Parties Participate in Arbitration

Defendant seeks for a stay of this matter.  Section 3 "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'" Concepcion, 563 U.S. at 344.  Here, all claims raised in the complaint are required to be submitted to arbitration pursuant to the arbitration agreement.  If the court "determines that all of the claims raised in the action are subject to arbitration, the court may either stay the action or dismiss it outright."  Whitworth, 336 F.Supp.3d at 1130 (quoting Johnmohammadi v. Bloomingdale's Inc., 755 F.3d 1072, 1074 (9th Cir. 2014) (internal citations omitted).  As Defendant seeks a stay of this matter for the parties to arbitrate Plaintiff's claims, the Court recommends that Defendant's motion to stay be granted.

### IV.

### CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendant's motion to compel arbitration and stay this action be GRANTED.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties.  Such a document

---

[2] Having found that the voiding provision does not apply to Plaintiff's claims and the provision is severable in the action, the Court declines to address the other issues raised by Defendant in the reply, including Defendant's request for this Court to find that Iskanian and McGill were wrongly decided.  Plaintiff's objections to the request for judicial notice are sustained and Defendant's request for judicial notice is denied as the documents are not relevant to the decision in this matter.

should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 4, 2021**

UNITED STATES MAGISTRATE JUDGE